IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE J. ZACHARKIW | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE PRUDENTIAL INSURANCE | : | NO. 10-cv-0639 |
| COMPANY OF AMERICA | : | |

MEMORANDUM ORDER

AND NOW, this 21st day of February, 2012, upon consideration of Plaintiff's Second Motion for Attorney's Fees and Costs (Doc. No. 23) and Defendant's Response in Opposition Thereto (Doc. No. 24), it is hereby ORDERED that Plaintiff's Motion for Fees and Costs (Doc. No. 23) is DENIED. The Clerk of Court is directed to close this matter for statistical purposes.

I.  Factual Background and Procedural History

This ERISA action involves Defendant Prudential Insurance Company of America's ("Prudential" or "Defendant") allegedly improper termination of Plaintiff George J. Zacharkiw's ("Zacharkiw" or "Plaintiff") long-term disability ("LTD") benefits. Zacharkiw suffers from Relapsing Remitting Multiple Sclerosis ("MS"). (Doc. No. 1 ¶¶ 7-9). At the time of his MS diagnosis in December of 2003, Zacharkiw worked as an Associate Director for Navigant Consulting ("Navigant"). (Doc. No. 1 ¶¶ 9-11). As a Navigant employee, Zacharkiw received disability insurance coverage through a plan sponsored by Navigant and insured by Prudential. (Doc. No. 1 ¶ 12).

According to the complaint, Zacharkiw ceased working on July 23, 2007, due to the

1

progression of his MS.  (Doc. No. 1 ¶ 14).  Prudential initially approved Zacharkiw's LTD benefits claim, and he began receiving such benefits on January 19, 2008.  (Doc. No. 1 ¶ 16).  However, Prudential terminated Zacharkiw's LTD benefits effective April 1, 2009, finding that Zacharkiw was no longer "disabled" under the plan's definition.  (Doc. No. 1 ¶¶ 23-27; Ex. H).  Zacharkiw appealed on June 26, 2009, but Prudential upheld its termination decision on September 25, 2009.  (Doc. No. 1 ¶¶ 28-38; Ex. K).

Zacharkiw filed a voluntary second appeal with Prudential in early February of 2010 and brought this suit about a week later on February 16, 2010, before the second administrative appeal ran its course.  (Doc. No. 9; Doc. No. 24, at 2-3).  In conjunction with this second appeal, Zacharkiw submitted a fair amount of new evidence to buttress his disability claim, including records from his neurologist, the results of neuropsychological testing ("NPT"), lab results, x-rays, and an MRI of his brain.  (Doc. No. 14, D1045-46).  Dr. Edward Murphy, who performed the new NPT, unequivocally supported Zacharkiw's disability claim:

> Given the nature of his work, it is my opinion that Mr. Zacharkiw is disabled from returning to active employment.  His work involves considerable attention to fine detail as well as a high level of productivity.  His most severe deficit on testing is related to his impaired processing abilities.  His prognosis for re-employment is poor given the progressive nature of his disease.  In addition to his neurocognitive deficits, he has marked symptoms of fatigue which tend to heighten his cognitive impairments.

(Doc. No. 14, D1385-91).

In addition, Dr. Murphy's NPT report of November 10, 2009, called into question Zacharkiw's previous NPT results, in which Dr. James Langan opined that Zacharkiw did not put forth a good faith effort on some of the tests and therefore scored lower than he should have.  Specifically, Dr. Murphy stated:

> I did have an opportunity to review the neuropsychological report by Dr. James Langan dated 02/18/09. I did not see any indication on the current examination of inadequate effort on testing. I did repeat one measure of effort-Test of Memory Malingering. His [Zacharkiw's] performance on this measure suggests no indication of any distortion or exaggeration of his results.

(Doc. No. 14, D1385-91). In the past, Prudential had relied on Dr. Langan's assessment of Zacharkiw's malingering to conclude that Zacharkiw was not disabled and therefore not entitled to LTD benefits. (See Doc. No. 1 ¶¶ 26-27, Ex. H).

Zacharkiw's complaint alleges that Prudential violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), by acting in an "arbitrary and capricious manner in terminating [his] long-term disability benefits." (Doc. No. 1 ¶¶ 39-47). On June 1, 2010, several months after Zacharkiw filed suit, the parties jointly petitioned the Court for a stay pending Prudential's decision on Zacharkiw's second appeal, and we granted the stay on June 7, 2010. (Doc. Nos. 9, 10). On September 7, 2010, over one (1) year ago, Prudential reinstated Zacharkiw's LTD benefits. (Doc. Nos. 14, at 3; 17, at 7; 17-1). According to Prudential, it reversed course and reinstated Zacharkiw's benefits based on a "review of the new medical documentation submitted for review on second reconsideration." (Doc. No. 14, D1401-02). Prudential also issued Zacharkiw a check for $121,068.00, apparently as payment for back benefits owed from April of 2009. (Doc. No. 17, at 7 n.3).

Prudential then moved to dismiss Zacharkiw's complaint under Federal Rule of Civil Procedure 12(b)(1) on mootness grounds. We granted the motion but retained limited equitable jurisdiction to decide the collateral issue of attorney's fees and costs. (See Doc. No. 19). Zacharkiw subsequently moved for fees and costs, arguing that he achieved some degree of success on the merits in this matter. For the reasons discussed below, we deny Zacharkiw's

motion.

II.     <u>Legal Analysis</u>

Under ERISA's flexible fee shifting provision, a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).  However, as a threshold matter, a fee claimant must have achieved "some degree of success on the merits" before a court may award fees and costs.  <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 130 S. Ct. 2149, 2152 (2010) (citation omitted).  The Supreme Court's <u>Hardt</u> decision makes clear that "[a] claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victor[y], but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue." <u>Id.</u> at 2158 (citations and quotations omitted).

The <u>Hardt</u> case, which spawned the "some degree of success on the merits" standard for ERISA fee shifting, involved peculiar facts.  At the district court level, Ms. Hardt moved for summary judgment against Reliance, her insurer, arguing that Reliance's decision to deny her benefits was unreasonable as a matter of law.  <u>Hardt</u>, 130 S. Ct. at 2154.  The district court denied Ms. Hardt's summary judgment motion but remanded the matter to Reliance because, in the court's opinion, Reliance's plan administrators failed to comply with ERISA guidelines, thus depriving Ms. Hardt of a legally sufficient review of her claim.  <u>Id.</u>  In remanding the matter, the district court found "compelling evidence" in the record that Ms. Hardt was totally disabled and was "inclined to rule" in her favor, but thought it wise to give Reliance a chance to address the deficiencies in its approach first.  <u>Id.</u>  Accordingly, the court instructed Reliance to act on Ms.

Hardt's application after considering all the evidence; otherwise, the court warned, "judgment will be issued in favor of Ms. Hardt." Id. Unsurprisingly, Reliance did as instructed and reinstated Ms. Hardt's benefits. Id.

On these facts, the Supreme Court held that Ms. Hardt had achieved "some success on the merits," which opened the door to an award of fees and costs. Hardt, 130 S. Ct. at 2158-59. However, the Court declined to elaborate on other scenarios that may or may not qualify as "some success on the merits." For example, the Court explicitly left open the question of "whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)." Id. at 2159. In light of the Court's narrow holding in Hardt, one would expect the "some success on the merits" inquiry to depend heavily on the precise factual circumstances and procedural posture of the matter at hand.

In the wake of the Hardt decision, that expectation has come to fruition. The Third Circuit has not yet addressed Hardt's "some success on the merits" standard. However, the courts of appeal that have spoken on the issue have ruled narrowly, on the facts before them, rather than endeavoring to define "some success on the merits" more concretely than the Supreme Court did in Hardt. See, e.g., Kough v. Teamsters' Local 301 Pension Plan, 437 Fed. App'x 483, 490 (7th Cir. 2011) (finding that "[w]hile the remand from the district court here reopened the case based on newly discovered evidence [from the Social Security Administration], the decision to grant Kough benefits was not a 'purely procedural victory.' After the remand, the district judge granted summary judgment for the defendants, and that final decision left Kough with eight months of disability benefits more than he had before the remand. That represents 'some success on the merits' under Hardt."); Huss v. IBM Med. & Dental Plan,

5

418 Fed. App'x 498, 512 (7th Cir. 2011) ("[E]asily" concluding that "a reversal of the administrative denial of benefits, a remand for further proceedings involving a different controlling document, and the imposition of a statutory penalty against the Defendants" constitutes "some success on the merits."); Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc., 657 F.3d 496, 506 (7th Cir. 2011) (deciding that "defendants met their initial burden of establishing 'some degree of success on the merits,' as we are affirming the dismissal, although on different grounds, of two of plaintiffs' claims against them."); McKay v. Reliance Standard Life Ins. Co., 428 Fed. App'x 537, 546-47 (6th Cir. 2011) (observing that "the district court explicitly concluded that McKay's receipt of 'another shot' at his claimed benefits was a 'success on the merits because his case was remanded for further consideration'; in other words, McKay 'achieved some degree of success' by achieving a remand."); 1 Lincoln Financial Co. v. Metropolitan Life Ins. Co., 428 Fed. App'x 394, 396 (5th Cir. 2011) (noting that "MetLife's motion for summary judgment was unopposed by Lincoln and the district court granted summary judgment in favor of MetLife on all of Lincoln's claims. MetLife clearly succeeded on the merits."); Toussaint v. JJ Weiser, Inc., 648 F.3d 108, 110 (2d Cir. 2011) (concluding that "there is no dispute that Defendants achieved both prevailing party status and some degree of success on the merits in this case because the district court granted summary judgment in their favor and we affirmed.  Accordingly, the difference between 'prevailing party' and 'some degree of success on the merits' is irrelevant here."); Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 634-35 (4th Cir. 2010) (having "no difficulty in concluding that Williams did show 'some degree of success on the merits.'  In fact, the degree of her success was very high, as shown by the district court's grant of Williams' motion for summary judgment and the

district court's holding that Williams was entitled to long-term disability benefits."); Simonia v. Glendale Nissan/Infiniti Disability Plan, 608 F.3d 1118, 1121 (9th Cir. 2010) (assuming without deciding that one party's voluntary dismissal of a counterclaim qualifies as "some degree of success on the merits" for the other party).

Having established the fact-intensive nature of the "some success on the merits" inquiry, we turn to the facts of this case. As discussed *supra*, Zacharkiw filed this lawsuit about a week after filing a second appeal with Prudential. In his second appeal, Zacharkiw submitted substantial new evidence of his disability, including new NPT results in which a doctor opined that Zacharkiw was disabled and could not return to work. The new NPT report also cast doubt on Zacharkiw's earlier NPT results, which showed evidence of malingering. After evaluating this new information, Prudential concluded that Zacharkiw met Prudential's definition of "disabled" and reinstated his LTD benefits.

Other than granting the parties' joint request to stay this litigation pending Zacharkiw's administrative appeal, we have had little involvement in this matter. We did not make any findings as to whether Prudential improperly terminated Zacharkiw's LTD benefits in the first place. We did not make any findings as to whether Prudential improperly denied Zacharkiw's first administrative appeal. We did not decide the exhaustion question. We did not rule on any summary judgment motions, as the parties submitted none. Finally, we did not remand this matter to Prudential for further consideration of either the old record or new evidence. As such, our actions in this case bear no resemblance to the active role played by the district court judge in Hardt, who found "compelling evidence" of Ms. Hardt's disability and directed the insurance company to reevaluate her claim or face an adverse court ruling. In short, the parties here

7

resolved this dispute among themselves at the administrative level, not in this Court.

Additionally and importantly, based on the record before us, we believe that Zacharkiw's new evidence of disability, not this lawsuit, caused Prudential to change course and reinstate Zacharkiw's benefits. This distinguishes Zacharkiw's situation from that in <u>Johnson v. Prudential Insurance Co. of America</u>, No. H-06-0130, 2008 WL 901526 (S.D. Tex. Mar. 31, 2008). In <u>Johnson</u>, a pre-<u>Hardt</u> decision, the Southern District of Texas determined than an ERISA plaintiff qualified as a "prevailing party" for the purposes of a fee award when the insurance company "denied [the plaintiff's] long-term disability benefits and, after she sued, reversed the decision based on the same record, with only limited additional information." <u>Id.</u>, at *8. The <u>Johnson</u> court opined that "[t]he reversal of the denial in the second administrative appeal appears to be the result of a more thorough review of the same evidence." <u>Id.</u> In other words, the court in <u>Johnson</u> implicitly found that the ERISA plaintiff's lawsuit, not new evidence, catalyzed the defendant insurance company's decision to reinstate benefits. Based on the evidence before us, that did not happen here. New medical evidence, not Zacharkiw's lawsuit, drove Prudential to conclude that Zacharkiw is disabled.

<u>Hewel v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson</u>, No. 09-5343, 2010 WL 2710582 (D.N.J. July 7, 2010), is analogous to <u>Johnson</u> and likewise distinguishable from the matter before us. In <u>Hewel</u>, the plaintiff sent a letter to the defendant pension committee contesting the termination of her disability benefits. <u>Id.</u>, at *1. The pension committee ignored the letter, and the plaintiff subsequently filed suit claiming that her letter constituted an appeal of the termination of her benefits. <u>Id.</u> After the plaintiff filed suit, the pension committee restored her benefits. <u>Id.</u> Under these circumstances, the <u>Hewel</u> court

concluded that the plaintiff had achieved some success on the merits because "[b]y bringing the Complaint and through subsequent correspondence, plaintiff caused the Pension Committee to recognize her appeal." Id., at *2.  The court emphasized that "only after the instant lawsuit commenced did it [defendant] respond to the letter or acknowledge that it was an appeal. Plaintiff then prevailed on the merits of her administrative claim." Id.  As in Johnson, the plaintiff in Hewel prevailed at the administrative level primary because she brought suit in federal court.  Again, our review of the record leads us to believe that this did not happen here; rather, Zacharkiw's newly submitted evidence precipitated Prudential's restoration of Zacharkiw's benefits.

      Thus, we hold that on the facts of this case, i.e., when an insurance company voluntary reinstates a claimant's benefits in an administrative appeal based on substantial new evidence without any significant court involvement, that claimant has not achieved "some success on the merits" of his ERISA claim and cannot recover attorney's fees and costs under Hardt.  Although Zacharkiw achieved "some success," it happened solely at the administrative level and without our input.

      In making this determination, we are acutely aware of the need to balance two competing policy goals.  On the one hand, the law should discourage insurance companies from wrongfully denying claims only to reinstate benefits after getting sued.  See Hewel, 2010 WL 2710582, at *2 (recognizing that awarding fees to ERISA plaintiffs may "deter plan administrators from wrongfully terminating benefits.").  Insurance companies should make claims' decisions based on the merits of the claim rather than the litigiousness of the claimant.  That way, the benefits properly flow to the truly deserving.

On the other hand, the law should not encourage putative plaintiffs to prematurely file suit in federal court, especially during the pendency of an administrative appeal in which the claimant submitted a bevy of new evidence for his insurance company to consider. See Templin v. Independence Blue Cross, No. 09–4092, 2011 WL 3664427, at *6 (E.D. Pa. Aug. 19, 2011) (observing that "had Plaintiffs fully engaged in the administrative review process prior to filing suit in federal court, they would have received that which they sought in the Complaint, avoiding the necessity of judicial intervention and those attorney's fees and costs associated with it."). The administrative review process affords the parties and the court many benefits. First, it "gives plan administrators the first opportunity to apply their expertise to interpret often lengthy and detailed plan documents, to reconsider initial decisions and correct mistakes, to collect facts, and to explain the rationale underlying the administrative decision." Id., at *7. Second, the parties might resolve their dispute, thus obviating the need for judicial review and the associated expense. Id. Finally, even if the parties cannot come to an agreement among themselves, the administrative process generates a record that may help a court reach the correct decision when the time comes. Id.

In this case, the latter concern far outweighs the former. Zacharkiw voluntarily filed a second appeal with Prudential and submitted new evidence to support his disability claim. Rather than giving Prudential the time to consider this new evidence, Zacharkiw immediately filed this ERISA suit. Allowing attorney's fees and costs in this case would undesirably encourage litigation despite the ongoing administrative review of a benefits claim, needlessly wasting the resources of the parties and the judiciary. Alternatively, if Prudential had reinstated Zacharkiw's benefits on essentially the same evidence pre- and post-suit, we would be inclined to

conclude that Zacharkiw achieved "some success on the merits" of his claim.  Under those circumstances, we could reliably infer that the lawsuit caused Prudential's change of heart, and we could fairly label the suit a substantial, non-trivial success.  We cannot draw that inference on these facts primarily because Zacharkiw significantly supplemented the administrative record in his second appeal.

Finally, even if Zacharkiw cleared Hardt's "some success on the merits" hurdle, which he has not, we would exercise our discretion and decline to award attorney's fees and costs under the five-factor test set forth in Ursic v. Bethlehem Mines, 719 F.2d 670 (3d Cir. 1983).[1]  Under Ursic, in deciding whether to award fees in an ERISA case, we may consider (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position.  Id. at 673 (citations omitted).

Here, we believe factors (1) and (3) are the most critical.  Regarding Prudential's culpability or bad faith, the evidence we have shows that Prudential reinstated Zacharkiw's LTD benefits on the basis of newly available medical evidence and without prodding from this Court.

---

[1] In Hardt, the Supreme Court did "not foreclose the possibility that once a claimant has satisfied this [some success on the merits] requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors adopted by the Court of Appeals. . .in deciding whether to award attorney's fees."  Hardt, 130 S. Ct. at 2158 n.8.  Although the Third Circuit has not yet spoken on the continued viability of the Ursic factors post-Hardt, the courts of appeal that have addressed the issue have continued to apply their respective circuit's analogous five-factor tests for fee shifting in ERISA actions.  See, e.g., O'Callaghan v. SPX Corp., 442 Fed. App'x 180, 186 (6th Cir. 2011); Kough, 437 Fed. App'x at 490 (7th Cir.); Toussaint, 648 F.3d at 110-11 (2d Cir.); Williams, 609 F.3d at 635 (4th Cir.).  We assume the Third Circuit will do the same.

Therefore, we cannot conclude that Prudential acted in bad faith.  Regarding the deterrent effect of awarding fees, we see no need to deter Prudential's conduct in this case.  As discussed *supra*, Prudential received new information regarding Zacharkiw's disability and acted accordingly.  On the other hand, we do wish to deter putative ERISA plaintiffs from prematurely filing suit before trying to work things out administratively.  Declining to award attorney's fees and costs in this matter may have the desired effect.

III.    Conclusion

For the aforementioned reasons, we DENY Plaintiff's Motion for Fees and Costs (Doc. No. 23) in its entirety.  The Clerk of Court is directed to close this matter for statistical purposes.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.